IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.    14-cv-01068-WYD-BNB

LISA MITCHELL,
Sa.M., by and through is next friend, MICHAEL LaJOIE,
T.L. by and through his next friend Lorraine Ortega,
J.R.M., by and through her next friend William Montez, and
Su.M., by and through his next friend, RICHARD MURRAY,

Plaintiffs,

v.

EL PUEBLO BOYS AND GIRLS RANCH, INC., an adolescent treatment community,
SHERRI BACA, President and CEO of El Pueblo, in her personal capacity for damages,
JOHN DOES 1-10, employees of El Pueblo in their personal capacity for damages,
CINDY HOWARD, Weld County DHS in her personal capacity for damages,
JANE DOE 1, Pursuant County DHS in his personal capacity for damages, and
JANE DOE 2, Arapahoe County DHS in his personal capacity for damages,

Defendants.
_____

**ORDER**
_____

I.      INTRODUCTION AND BACKGROUND

This matter is before the Court on Defendant Cindy Howard's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 17).  The motion is denied as set forth below.

In this action, Plaintiffs bring two federal constitutional claims against Defendant Cindy Howard, who is a case worker with the Weld County Department of Social Services ("DHS").  The Amended Complaint also contains federal constitutional claims against Defendant Sherri Baca, the President and CEO of El Pueblo, and various Doe Defendants, and a state law negligence claim against Defendant El Pueblo.  Relevant to

the pending motion, Plaintiffs allege Defendant Howard's conduct in handling minor Plaintiff Sa.M.'s case, constituted a violation of the right to substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution. Howard moves for dismissal of the claims against her contending that the allegations in Plaintiffs' Amended Complaint, even if true, are insufficient to establish a constitutional violation. Howard also asserts that she is entitled to qualified immunity on each of Plaintiffs' claims.

II.     ALLEGED FACTS

Although much detail is provided in the Amended Complaint, the pertinent allegations can be summarized briefly. For purposes of determination of this motion, I treat the allegations as true.

Plaintiff Sa.M. is Lisa Mitchell's minor son. Sa.M. suffers from mental health and developmental problems and has been diagnosed with various cognitive disorders including bipolar disorder. Since 2007, Sa.M. has been in placement through the Weld County DHS. In 2009, Sa.M. was placed at El Pueblo, an adolescent treatment facility. In 2010, Defendant Howard, Sa.M.'s DHS case worker, initiated a Dependency and Neglect action in the Weld County juvenile court. The court issued an Order for Temporary Custody, and the DHS took custody of Sa.M. On October 7, 2010, the court entered a default decree in the dependency and neglect proceeding. The default decree approved a formal treatment plan, which included numerous "Action Steps." Relevant to this motion, Action Step 5 provides that "Mrs. Mitchell will maintain weekly telephone contact with Sa.M. as well as a minimum of monthly visits, if requested by Mrs. Mitchell,

the Department will attempt to assist with transportation costs directly related to participation in her son's treatment." (ECF No. 16-1).[1]

The Amended Complaint goes on to allege numerous specific allegations of physical, sexual, and emotional abuse suffered by Sa.M. and the other minor Plaintiffs while housed at El Pueblo. Plaintiffs allege that Howard knew about the abuse and was deliberately indifferent in failing to insure Sa.M. was both safe from the abuse and being treated for the effects of the abuse. Plaintiffs further allege that Howard ignored pleas from Mitchell to help her son and refused or failed to communicate with Mitchell. Moreover, in contravention of the court's formal treatment plan, Howard allegedly repeatedly refused to supply Mitchell with either money or gas cards to enable Mitchell to drive from Greeley to Pueblo to visit her son.

III.  ANALYSIS

A.  Standard of Review

Howard seeks dismissal of Plaintiffs' claims for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court's inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). "To

---

[1] I consider this decree in conjunction with the motion to dismiss without conversion to a motion for summary judgment because the dependency and neglect filings are referenced and relied upon in the Amended Complaint and because I may take judicial notice of pleadings from other courts.

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.   Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).   Furthermore, conclusory allegations are "not entitled to the assumption of truth."   *Id.* at 1950.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true."   *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).   Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."   *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."   *Id.*   "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."   *Id.* at 1248.   Additionally, the Tenth Circuit has instructed that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case."   *Id.*

Here, Howard has invoked the defense of qualified immunity. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When a defendant raises qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process. The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*[2]

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v.*

---

[2] In a recent decision, the Supreme Court held that courts are no longer required to follow the *Saucier* format in evaluating a qualified immunity claim. *Pearson v. Callahan*, 555 U.S. 223 (2009).

-5-

*Haugen*, 543 U.S. 194, 198 (2004).   Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).   In other words, there must be case authority in which a constitutional violation was found based upon similar conduct.   See *Callahan v. Millard County*, 494 F.3d 891, 903 (10th Cir. 2007).

> B. <u>Whether Plaintiff Sa.M.'s First Claim for Relief Under the Fourteenth Amendment—Denial of Right to Familial Relationship and for Cruel and Unusual Punishment Pursuant to 42 U.S.C. § 1983—Should be Dismissed Against Defendant Cindy Howard</u>

Plaintiff Sa.M.'s right of familial association is included in the substantive due process right of freedom of intimate association, which is consistent with the right to privacy.   *J.B. v. Washington County*, 127 F.3d 919, 927 (10th Cir. 1997).   "The right is based on the Fourteenth Amendment liberty interest."   *Id.*   However, "not every statement or act that results in an interference with the rights of intimate association is actionable."   *Id.*   The Tenth Circuit has held that a familial association claim occurs only if the state actor "inten[ded] to interfere with [the] relationship.   *Trujillo v. Brd. of County Commissioners of Santa Fe County*, 768 F.2d 1186, 1190 (10th Cir. 1985).   A plaintiff can establish such intent by showing that the state actor's challenged conduct is directed at the intimate relationship with knowledge that the conduct will adversely affect that relationship.   *J.B.*, 127 F.3d at 928.

Here, turning to Plaintiffs' Amended Complaint, I find that Plaintiff Sa.M. has sufficiently alleged such intent on the part of Howard.   Plaintiffs' allegations establish that

Howard failed to comply with the court's formal treatment plan, which required her to assist Mitchell with her transportation costs in driving to Pueblo from Greeley to participate in the treatment of Sa.M.   Knowing that Mitchell is indigent, Howard allegedly refused to assist Mitchell with transportation costs and ignored Mitchell's attempts to obtain gas money so that Mitchell could afford to drive to Pueblo to see her son.   Taking these allegations as true, I find that Howard knew that withholding transportation assistance from Mitchell would result in keeping Mitchell from seeing her son, thus interfering with the mother/son familial relationship.   Accordingly, I find Plaintiffs have plausibly asserted a violation of a federal constitution right to familial association, which has been clearly established in the Tenth Circuit for many years.   *See Trujillo,* 768 F.2d at 1188-89.

Plaintiffs also allege that Howard violated Sa.M.'s right against cruel and unusual punishment while housed at El Pueblo, a private adolescent treatment facility that contracts with the State of Colorado.   I find that the Amended Complaint sufficiently alleges a violation of this clearly established right.   In 1982, well before the allegations in this case, the Supreme Court held under the Due Process Clause of the Fourteenth Amendment that an involuntarily committed mental patient "enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by those interests." *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982).   Indeed, the substantive component of the Due Process Clause requires the state to provide involuntarily committed mental patients "with such services as are necessary to ensure their reasonable safety from

themselves and others." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 199 (1989) (internal quotations omitted). Further, the law is clearly established that state officials have a duty to protect other individuals whom they have taken involuntarily into their physical custody and control. *Liebson v. New Mexico Corr. Dep't*, 73 F.3d 274, 277 (10th Cir. 1996) (citing *DeShaney*, 489 U.S. at 195–97). This includes juveniles or children who are confined in state facilities. *Yvonne L., by and through Lewis v. New Mexico Dep't of Corr.*, 959 F.2d 883, 893 (10th Cir. 1992) (citing *Milonas v. Williams*, 691 F.2d 931, 942 (10th Cir. 1982) and other cases); *see also Whitley v. New Mexico Children, Youth & Family Dep't*, 184 F. Supp. 2d 1146, 1155 (D.N.M. 2001).

Those cases clearly show that Plaintiff Sa.M., a juvenile with mental impairments who was detained in a facility that contracts with the State of Colorado, had clearly established rights under the substantive due process clause to reasonable care and safety as well as such training as may be required by those interests. This is known as the "special relationship" doctrine that "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual…." *Whitley*, 184 F. Supp. 2d at 1154 (internal citation omitted).

The Amended Complaint on its face implicates the right to reasonable care and safety, as the Plaintiffs complain that the Defendants did not house them in a safe environment or protect him from physical assaults. (Am. Compl. ¶¶18-41, 52-60). Indeed, it is alleged that the constitutional violations arise out of the Defendants' reckless disregard of the following facts:

> (1) El Pueblo staff members physically abuse the children in their care; (2) El Pueblo Staff members fail to keep the children safe from sexual assault;

> (3) El Pueblo Staff members fail to provide medical treatment for broken bones, sexually transmitted diseases and scabies; (4) El Pueblo Staff members lock the children in the Reflections Cottages in solitary confinement, for weeks at a time without sufficient food, access to their attorneys, without sufficient bedding or clothing, without outdoor recreation and without being able to attend school.

(Am. Compl. ¶ 57).  These incidents are described in detail in the Amended Complaint.  Plaintiff Sa.M. further alleges that although Defendant Howard was aware of the abuse and suffering he was subjected to, Howard was deliberately indifferent to her duty to protect him from harm.  I find that these allegations "describe adequately the various incidents and conduct that constitute the deprivation"; thus, they "do more than merely identif[y] a clearly established right and then alleg[e] that the defendant has violated it."  *Neiberger v. Hawkins*, 6 F. App'x 683, 687 (10th Cir. 2001).

I also find that the right allegedly violated was "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Howard is Plaintiff Sa.M.'s DHS case worker and was involved in the decision to place him at El Pueblo and continued to oversee his placement.  As in the *Neiberger* case, "[a] reasonable person in such a position should know that ... [juveniles detained in the facility] enjoy a constitutionally protected interest in conditions of reasonable care and safety, and that allowing or implementing policies resulting in the acts alleged in the complaint would violate that interest."  *Neiberger*, 6 F. App'x at 687; *see also Yvonne L.*, 959 F.2d at 893 (finding in 1992 that officials sued in connection with the foster care system were "clearly alerted ... that children in the custody of a state had a constitutional right to be reasonably safe from harm ...").

Defendant Howard argues that Plaintiffs have failed to allege her personal

participation in the alleged constitutional violations.   Here, Plaintiffs must show that Howard knew of the asserted danger to Sa.M. or failed to exercise professional judgment with respect thereto and an affirmative link to the injuries Sa.M. suffered.   *See Yvonne L.*, 959 F.3d at 894; *Youngberg*, 457 U.S. at 322.

In the Amended Complaint, Plaintiff Sa.M. specifically alleges Howard's affirmative link to the constitutional violations suffered by him as well as Howard's knowledge of them.   The Amended Complaint repeatedly alleges that Howard knew about the recurring assaults, abuse and injuries, "however, she was deliberately indifferent to her duty to keep Sa.M. safe from harm."   (Am. Compl. ¶¶ 22, 23, 25, 29, 30, 31, and 34).   I find that the allegations referenced above, accepted as true and construing them in the light most favorable to Plaintiff Sa.M., plausibly supports a claim that Howard—by virtue of her own conduct and state of mind—violated Plaintiffs' constitutional right of due process and that this right was clearly established at the time of Howard's unlawful conduct.   Accordingly, Howard's motion to dismiss this claim on the basis of qualified immunity is denied.

IV.   CONCLUSION

Based on the foregoing, it is

ORDERED that Defendant Cindy Howard's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 17) is **DENIED.**

Dated: January 20, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge