**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case Action No. 14-CV-1068-WYD-NYW

LISA MITCHELL,
J.R.M., by and through her next friend William Montez,
SU. M., by and through his next friend Richard Murray,
SA. M., by and through his next friend Michael LaJoie, and
T.L., by and through his next friend Lorraine Ortega,

    Plaintiffs,

v.

CINDY HOWARD,
SHERRI BACA, and
EL PUEBLO BOYS AND GIRLS RANCH, INC.,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This civil action is before the court for Recommendation on two motions involving Plaintiffs Lisa Mitchell ("Lisa Mitchell" or "Ms. Mitchell") and Samuel Mitchell ("Samuel Mitchell" or "Mr. Mitchell") and their claim against Defendant Cindy Howard:

    (1)    Plaintiffs' Motion to Set Aside Settlement [#63] filed on behalf of Lisa and Samuel Mitchell on August 13, 2015; and

    (2)    Motion to Enforce Settlement Agreement from Defendant Cindy Howard ("Motion to Enforce Settlement") [#74] filed on behalf of Defendant Cindy Howard ("Defendant Howard" or "Ms. Howard") on August 19, 2015.

These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(2), the Order Referring Case dated April 16, 2014 [#4], the Order of

Reassignment dated February 10, 2015 [#52], and the memoranda dated August 14, 2015 [#65] and August 20, 2015 [#78]. On October 2, 2015, this court held an evidentiary hearing on the Motion to Set Aside Settlement and the Motion to Enforce Settlement. Due to Plaintiffs Lisa and Samuel Mitchell proceeding *pro se*, and to account for Ms. Mitchell's request for accommodation, the court permitted the Mitchells and Defendant Howard to submit supplemental briefing after the transcript of the evidentiary hearing became available. [#160]. Ms. Mitchell filed supplemental briefing [#159], to which Defendant Howard responded on November 13, 2015. [#164].

The court has reviewed the Parties' briefing, the transcript of the evidentiary hearing, the applicable case law, and based on such review, respectfully **RECOMMENDS** that Plaintiffs' Motion to Set Aside Settlement Agreement be **GRANTED** and Defendant Howard's Motion to Enforce Settlement Agreement be **DENIED**.

## BACKGROUND

Plaintiffs Lisa Mitchell and her son, Samuel Mitchell,[1] initiated this action on April 14, 2014, asserting various causes of action pursuant to 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendments and a state law claim for negligence against Cindy Howard ("Defendant Howard" or "Ms. Howard"), Judy Griego, Sherrie Baca ("Defendant Baca" or "Ms. Baca"), Carrie Archuletta, Scott Epstein, "El Pueblo, an Adolescent Treatment Community," and various John Does through their then-attorney, Alison Ruttenberg ("Ms. Ruttenberg"). [#1]. Ms. Mitchell and Mr. Mitchell, through counsel, then filed an Amended

---

[1] Samuel had not yet reached the age of majority at the time the Complaint was filed and was identified as "S.M." and then later as "Sa.M." Samuel reached his eighteenth birthday on June 16, 2015, and is therefore identified hereafter by his full name, which he has used in his own filings and as Lisa Mitchell has used in her filings on their behalf. *See* [#67 at 3, ¶ 4]. *See, e.g.,* [#90].

2

Complaint on July 14, 2014 adding Plaintiff T.L., by and through his next friend Lorraine Ortega, Plaintiff J.R.M., by and through her next friend William Montez, and Plaintiff Su.M., by and through his next friend at that time Susan Murray, and naming as Defendants Ms. Baca, Ms. Howard, El Pueblo Boys and Girls Ranch, Inc. ("El Pueblo Ranch"), and John and Jane Does. [#14]. The Amended Complaint asserts claims for relief pursuant to § 1983 for violation of Plaintiffs' First, Fourth, Eighth, and Fourteenth Amendment rights as to Defendants Howard, Baca, and the John and Jane Does,[2] and a second claim for relief for negligence as to El Pueblo Ranch and Ms. Baca (collectively, "El Pueblo Defendants"). [*Id.*]

Defendant Howard moved to dismiss the claims against her for failure to state a claim. On January 20, 2015, the court denied the motion, finding that the Mitchells had sufficiently pled the two claims against Defendant Howard—one by both Mitchells for interference with familial relationship in violation of the Fourteenth Amendment, and one brought just by Samuel Mitchell for deliberate indifference amounting in a violation of the cruel and unusual punishment clause of the Eighth Amendment. [#47; #55 at 3]. None of the other Plaintiffs has a claim against Defendant Howard. [*Id.*] Nor does Ms. Mitchell have any claims against Ms. Baca or El Pueblo Ranch. [*Id.*]. The court subsequently granted Plaintiff's Unopposed Motion to Delete References to the John Doe Defendants on January 21, 2015 [#48], leaving as Defendants Baca and Howard in their individual capacities and El Pueblo Ranch. *See* [#14 at 28].

On July 31, 2015, Ms. Ruttenberg and Ms. Mitchell discussed resolving the lawsuit with Cindy Howard. [#156 at 90:18-25, 91:1-10]. Ms. Ruttenberg and Ms. Mitchell differ in their

---

[2] While pled as a single claim, Plaintiffs' First Claim for Relief is actually an amalgamation of various causes of action brought by certain Plaintiffs against certain Defendants. [#14 at 28]. Therefore, while characterized as a single claim against Ms. Howard, it consists of a claim brought by Lisa and Samuel Mitchell against Defendant Howard for a denial of familial relationship, and a separate claim brought solely by Samuel Mitchell against Defendant Howard for deliberate indifference. [#47; #55 at 3; #157 at 2-3].

respective recollections of the substance of that discussion. That same day, Ms. Ruttenberg and counsel for Defendant Howard reached an agreement to resolve the matter. [#152-3]. No draft agreement was exchanged or signed that day. By the following day, Ms. Mitchell was reminding Ms. Ruttenberg that she would not settle "without me being present." [#153-5 at 1].

On August 13, 2015, Ms. Mitchell, on behalf of herself and Samuel Mitchell,[3] filed the instant Motion to Set Aside Settlement, contending that "Ms. Ruttenberg entered into a settlement with Cindy Howard without Ms. Mitchell's approval." [#63 at 2]. In addition, Ms. Mitchell argues that "she did not sign or authorize any settlement with Cindy Howard." [*Id.*]. Ms. Mitchell also filed a Motion to Dismiss Counsel [#62], and a Motion for an Emergency Hearing [#64]—both directed at Ms. Ruttenberg's representation. On September 6, 2015, Samuel Mitchell filed a letter with the court, which this court interprets as his joinder to the Motion to Set Aside Settlement. *See* [#111 at 7 ("Alison Ruttenberg did not call me, write me, talk to me about one hundred dollars was ok with me. Which it is not ok with me Because one hundred dollars is nothing conpared to what they have done to me."]. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that a *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers).

Less than a week later, Defendant Howard filed her Motion to Enforce Settlement, arguing that the fact that Ms. Mitchell later changed her mind regarding settlement could not, and did not, void the settlement agreed to between Ms. Ruttenberg and counsel for Defendant Howard. [#74]. The court held an evidentiary hearing on October 2, 2015, at which time both

---

[3] Lisa Mitchell has filed papers on her own and Samuel Mitchell's behalf in this instant action. *See, e.g.*, [#64]. In addition, Samuel Mitchell requested that his mother, Lisa Mitchell, be allowed to be "his new lawyer or act as my representative, or next friend." [#90]. The court ruled that Ms. Mitchell could not represent her adult son because she is not a licensed attorney. [#105 at 7].

4

Lisa Mitchell and Defendant Howard were allowed to present evidence. [#152]. The Parties stipulated to, and the court accepted as evidence, a number of exhibits which relate to the communications between Ms. Ruttenberg and Ms. Mitchell and counsel for Defendant Howard. [#152-1, #152-2 #152-3, #152-4, #152-5. #153-1, #153-2 #153-3, #153-4, and #153-5]. Ms. Mitchell expressly waived her attorney-client privilege with respect to her communications with Ms. Ruttenberg regarding the purported settlement. [#156, 27:15-19, 29:3-15]. At the hearing, both Ms. Ruttenberg and Ms. Mitchell testified at length about their communications related to settlement. [#156].

## ANALYSIS

I. **Applicable Law**

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (citing *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993)). To do so, however, it must follow the principles of contract law, as a settlement agreement is a contract to end judicial proceedings. *Recreational Dev. Co. v. Am. Constr. Co.*, 749 P.2d 1002 (Colo. App. 1987). Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law. *See United States v. McCall,* 235 F.3d 1211, 1215 (10th Cir. 2000). A settlement agreement need not be written to be enforced so long as its terms are clear, unambiguous, and capable of enforcement. *See Citywide Bank of Denver v. Herman*, 978 F. Supp. 966, 977 (D. Colo. 1997). However, the Parties must agree on all material terms to create a valid settlement agreement. *See DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001). A contract cannot be binding if it appears that further negotiations are required to work out important and essential terms. *Id.*

Under Colorado law, an attorney is an agent for her client, *Siener v. Zeff*, 194 P. 3d 467, 471 (Colo. App. 2008), but as such, does not have the authority to compromise and settle the claim of her client without the knowledge or consent of her client. *See Cross v. District Court*, 643 P.2d 39, 41 (Colo. 1982) (en banc). A client will not be bound to an agreement made by her attorney when an attorney has not been granted express or implied authority. *Siener*, 194 P. 3d at 471. Express authority exists "if the principal directly states that an agent has authority to perform a particular act on the principal's behalf." *Villalpando v. Denver Health & Hosp. Auth.*, 181 P.3d 357, 362-63 (Colo. App. 2007). "Implied authority involves authority to do acts that are incidental to, or are necessary, usual, and proper to accomplish or perform, the primary authority expressly delegated to the agent." *Id.*

There is a presumption that an attorney has express authority to settle unless there is evidence to the contrary in the record. *See Shoels*, 375 F.3d at 1060. A party who denies that her attorney was authorized to enter a settlement on her behalf bears the burden to prove that authorization was not given. *See Humphreys v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-00331-WYD-KMT, 2009 WL 1292617, *5 (citing *Trujillo v. New Mexico*, 172 F.3d 63 (Table), 1999 WL 63885, *2 (10th Cir. 1999). A change of mind regarding the settlement is not a basis to void its terms. *See Fortner v. Young,* No. 06-cv-02148-BNB-MEH, 2013 WL 791425, * 5 (D. Colo. Mar. 4, 2013).

The existence of a settlement agreement is generally a question of fact. *I.M.A. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882 (Colo. 1986). An evidentiary hearing is required if the terms or existence of the settlement are in dispute. *See City & County of Denver v. Adolph Coors Co.*, 813 F.Supp. 1476 (D. Colo. 1993). Here, the core dispute is whether Ms. Ruttenberg had the authority to settle the Mitchells' claim for denial of familial relationship and Mr.

Mitchell's claim for deliberate indifference. With this legal framework in mind, this court now turns to that dispute.

## II.     Findings of Fact

The following facts are undisputed:

(1)     At the beginning of this case on April 14, 2014 and until she was granted leave to withdraw from representation on September 1, 2015, Ms. Ruttenberg represented all Plaintiffs, including Lisa Mitchell and Samuel Mitchell. [#1, #106; #156 at 86:21-23].[4]

(2)     At the beginning of the lawsuit, Mr. Mitchell was a minor. [#1 at ¶ 3]. In both the original and Amended Complaints, Lisa Mitchell is identified as Samuel Mitchell's next friend. [#1, #14].

(3)     On September 19, 2014, the court granted Plaintiffs' unopposed Motion to substitute Michael LaJoie, Mr. Mitchell's guardian ad litem in state court proceedings, for Ms. Mitchell as Samuel Mitchell's next friend. [#23, #36].

(4)     Mr. Mitchell turned eighteen on June 16, 2015. [#67 at 3, ¶ 4].

(5)     On July 31, 2015, Ms. Ruttenberg and Ms. Mitchell had a telephone conversation about the status of the action. [#156 at 90:18-25, 91:1-10]. That discussion included the possibility of settlement against Defendant Howard. [*Id.*].

(6)     Ms. Ruttenberg and Ms. Mitchell had previously discussed possible settlements. [#156 at 68:20-23].

---

[4] When citing to the testimony provided during the evidentiary hearing held on October 2, 2015, the court refers to the docket number of the transcript of the proceeding as assigned by the court's Electronic Court Filing ("ECF") system, but the page and line number of the original transcript for ease of reference.

7

(7) Ms. Ruttenberg, however, never spoke with Samuel Mitchell directly regarding compromising his claims. [#156 at 71:2-25, 72:1-16, 73:4-75:14; #111]. Ms. Ruttenberg has never met Samuel Mitchell. [*Id.* at 73:4-5; #111].

(8) Mr. LaJoie, Samuel's next friend, was not involved with the potential settlement on behalf of Samuel Mitchell. [#156 at 74:3-10].

(9) On July 31, 2015, Ms. Ruttenberg conveyed an offer of settlement to counsel for Defendant Howard, to resolve at least[5] the claim of denial of the right to familial association against Defendant Howard. [#63 at 2; #74 at 1-2; # 152-3 at 2].

(10) That same day, counsel for Defendant Howard accepted the offer, and made clear in her communication the acceptance pertained to settlement of "all claims by [the Mitchells], with no admissions of wrongdoing." [#73; #152-3 at 2].

(11) The attorneys then discussed an additional term of the settlement to avoid imposition of a lien upon the payment, and that counsel for Defendant Howard would provide a draft settlement agreement upon her return to the office after her vacation. [*Id.* at 2; #74 at 2].

(12) On or about August 1, 2015, Ms. Mitchell contacted Ms. Ruttenberg by email asking for a written summary of "last week communications"; she stated, "[p]lease be reminded I have no intention to settle without me being present." [#153-2 at 4].

(13) On August 2, 2015, Ms. Ruttenberg sent Ms. Mitchell an outline of the settlement with Cindy Howard as follows: "she is going to close out the weld County case, and is not going

---

[5] Ms. Ruttenberg's offer was ambiguous as to whether it included resolution of Mr. Mitchell's separate claim against Defendant Howard for deliberate indifference. [#152-3 at 2]. Indeed, Ms. Ruttenberg's testimony at the evidentiary hearing focused on the claim for denial of familial relationship. *See, e.g.,* [#156 at 41:15-43:17]. However, Ms. Ruttenberg's subsequent communication and conduct made clear that she intended the settlement to apply to all claims against Ms. Howard, whether brought by Lisa and Samuel Mitchell, collectively, or Samuel Mitchell, individually. [#152-3 at 1].

8

to seek jurisdiction over Sam as an adult. She is going to pay $500 cash, and we are going to stipulate that this money is to be reimbursed for travel expenses, not for medical expenses. We have to have that stipulation, in order to prevent Medicaid from slapping a lien on the settlement."[6]   [#153-2 at 3].

(14)   The written communications between Ms. Ruttenberg and Ms. Mitchell did not include Samuel Mitchell or Mr. LaJoie. [#153-2; #111].

(15)   The attorneys did not discuss settlement again until on or about August 8, 2015. [#152-3 at 1]. At that time, counsel for Ms. Howard proposed entering "a stipulation for dismissal of just [Samuel]" and having the settlement agreement "be with just Lisa." [*Id.*].

(16)   On August 9, 2015, Ms. Ruttenberg agreed to those terms. [*Id.*]. There is no written communication between Ms. Ruttenberg and Ms. Mitchell regarding those terms.

(17)   On August 13, 2015, Ms. Mitchell filed a Motion to Dismiss Counsel [#62] and a Motion to Request Emergency Hearing [#64] on behalf of herself and Samuel Mitchell.

(18)   In the Motion to Dismiss Counsel, Lisa Mitchell contended that "Alison Ruttenberg entered into this settlement without my knowledge, consent, or signature." [#62 at 1].

(19)   In the Motion to Request Emergency Hearing, Ms. Mitchell stated "[w]e ask to be allowed the opportunity denied to us to provide evidence to prove our case against Ms Howard &amp; Judy Greigo and the Department of Human Services since our Attorney acted solely, and without my informed consent." [#64 at 3].

---

[6] When this court quotes directly from the filings of the Parties, including Lisa and Samuel Mitchell, it does so without regard to whether there are spelling or grammatical errors, and without the use of [sic].

(20)    Samuel Mitchell stated that "Alison Ruttenberg did not call me, write me, talk to me about one hundred dollars was ok with me. Which it is not ok with me Because one hundred dollars is nothing conpared to what they have done to me." [#111 at 7].

### III.    Counsel's Authority to Enter Into Settlement

It is well-settled that while an attorney serves as the client's agent, she does not have authority to compromise, settle, or consent to a final disposition of her client's case without express authority. *See Thomas v. Colorado Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir. 1966). Based on the record before it, this court respectfully recommends that the settlement agreement not be enforced because Ms. Ruttenberg did not have authority to compromise, settle, or consent to a final disposition on behalf of Samuel Mitchell, and in the alternative, any implied authority to settle had been revoked prior to the attorneys reaching agreement on essential terms.

It is undisputed that by July 31, 2015, Samuel Mitchell was an adult. [#67 at ¶ 4]. Yet the record is clear that at no time did Ms. Ruttenberg ever directly consult Mr. Mitchell about this case, including but not limited to resolution of his claims, including the claim for deliberate indifference brought solely by him against Defendant Howard. [#156 at 71:2-25, 72:1-16, 73:4-75:14; #111 at 1]. In fact, Ms. Ruttenberg has never met Samuel Mitchell. [#156 at 73:4-5; #111 at 1]. Ms. Ruttenberg's communications with Lisa Mitchell regarding the settlement also did not include Samuel Mitchell—either in oral or written form. *See, e.g.*, [#153-2 at 3-4]. And Ms. Ruttenberg's communications with Defendant Howard's counsel do not include Mr. Mitchell. [#152-3 at 1-3]. Therefore, this court concludes that Ms. Ruttenberg did not have express authority to act on behalf of Samuel Mitchell to settle his claims against Defendant Howard at the time the attorneys negotiated and purportedly reached an agreement on July 31.

10

In addition, this court concludes that Ms. Ruttenberg also had no implied authority to act on Mr. Mitchell's behalf. As addressed above, Ms. Ruttenberg did not first have express authority from Mr. Mitchell through which she could have derived implied authority. In addition, Ms. Ruttenberg had not consulted Mr. LaJoie, Mr. Mitchell's next friend, as of July 31, regarding any possible compromise, settlement, or final disposition of Samuel Mitchell's claims against Defendant Howard, as evidenced by Ms. Ruttenberg's testimony that Mr. LaJoie had not wanted to be involved in this civil action despite his role as Mr. Mitchell's named next friend. [#156 at 74:3-10]. Instead, all communications regarding Samuel Mitchell's claims were routed through Lisa Mitchell. While Ms. Ruttenberg and Ms. Mitchell vigorously dispute whether Ms. Ruttenberg asked Ms. Mitchell to speak with Samuel regarding the settlement and whether Ms. Mitchell then conveyed to Ms. Ruttenberg that she had permission to settle on behalf of Samuel,[7] this court concludes, based on the record before it, that as of July 31, Ms. Ruttenberg lacked authority—either express or implied—from Samuel Mitchell because Lisa Mitchell had no legal authority to bind him. It is undisputed that Samuel Mitchell had never communicated to Ms. Ruttenberg, either orally or through writing, that his mother had the right to settle and compromise his claims against Defendant Howard. [#111 at 1 ("Alison Ruttenberg never met me or talked to me or came to see me at El Pueblo and Emily Griffith Center. She never

---

[7] Ms. Ruttenberg testified that "I asked [Ms. Mitchell], 'Discuss this with your son when you see him, when you go down to Pueblo the next time you see him and see if he is on board with this.' I relied on her to discuss that with Samuel and get back to me as to whether Samuel would go along with it, too, for the same reasons I discussed with her" and "I asked [Ms. Mitchell] to discuss [the settlement] with [her] son to see if he was on board with it. And you told me you did discuss it with him and that he agreed with you for the same reasons I discussed with you, that this would be a good idea." [#156 at 37:5-11; 71:5-9]. In her Response to Motion and Evidentiary Hearing Transcript [Document 156], Ms. Mitchell denied that Ms. Ruttenberg had ever asked her to discuss settlement with Samuel [#159 at 6], and that it would have not have been possible to get Samuel's agreement because he was forbidden to receive phone calls or visits based on Mount View's policy until he completed orientation." [*Id.* at 10].

included me in any court dates or time since she has been my attorney."). Furthermore, as of July 31, Mr. Mitchell was an adult. Ms. Mitchell was not Mr. Mitchell's next friend in this action; Mr. Mitchell had not executed a power of authority conveying authority to his mother to act on his behalf; and Ms. Mitchell had not been appointed by any court to act as a guardian for Mr. Mitchell. Even assuming for these purposes that Ms. Mitchell had authorized Ms. Ruttenberg to settle on behalf of Samuel (which Ms. Mitchell vigorously denies), the familial relationship alone is insufficient to convey Lisa Mitchell the authority to bind Samuel Mitchell. *See e.g.*, *Lujan v. Life Care Centers of America*, 222 P.3d 970 (Colo. App. 2009) (finding in the context of a health care proxy, an adult son lacked authority to bind his mother to an agreement to arbitrate). And, unlike in *Fortner v. Young*, there is no testimony from Samuel Mitchell that Lisa Mitchell speaks on his behalf for the purposes of this litigation, or that if Ms. Mitchell wanted to settle the case, he would go along with whatever Ms. Mitchell wanted. *See Fortner v. Young*, 582 F. App'x 776, 781 (10th Cir. 2014); *Fortner*, 2013 WL 791425 at *5. Nor did Samuel (or Lisa) Mitchell accept any offer by signing, notarizing, and initialing every page. *See Namoko v. Cognisa Security, Inc.*, 264 F. App'x 753, 754 (10th Cir. 2008).

There is also some question as to whether Mr. Mitchell had the capacity to contract as of July 31. *See Lucier v. Midland Credit Mgmt, Inc.*, No. 14-cv-00847, 2014 WL 4947317, *2-*3 (D, Colo. Oct. 2, 2014) (observing that only a mentally competent person can form an enforceable contract under Colorado law), *adopted by* 2014 WL 5784695 (D. Colo. Nov. 5, 2014). Even assuming that Ms. Mitchell could have authorized Ms. Ruttenberg to settle on behalf of Samuel, it is not at all clear that Mr. Mitchell had the capacity to contract. On August 18, 2015, Ms. Ruttenberg asserted in her Unopposed Motion for Writ of Habeas Corpus Ad Testificandum to Procure Incarcerated Plaintiff S.M.'s Presence at the August 21, 2015 Hearing

12

that Mr. Mitchell was initially determined to be incompetent, but was then deemed restored to competency. [#67 at 3]. In relation to the Motion to Dismiss Counsel [#62], Ms. Ruttenberg contended that "it is critically important for S.M. to be transported to this hearing so that the Magistrate can inquire into his mental capacity to make this decision and that he understand the consequences of his actions." [#67 at 2]. If Ms. Ruttenberg was concerned about Mr. Mitchell's mental capacity to make a determination as to whether she should be dismissed as counsel, she should have been equally concerned, particularly given the fact that she had not directly spoken with him, that he did not have the mental capacity to compromise, settle, and finally dispose of his claims against Defendant Howard just eighteen days prior on July 31.

Finally, Defendant Howard argues that she "engaged in good faith settlement negotiations with Plaintiffs, and is entitled to rely on the agreement that they expressly agreed to, in writing, through their attorney." [#74 at 5]. To the extent that she is attempting to rely upon a theory of apparent authority to enforce the settlement, this court finds such a theory inapposite. *See Lucier*, 2014 WL 4947317, at *2 (holding that under Colorado law, "the 'apparent authority' principles of agency law do not apply: the counterparty cannot rely on the disputing party's attorney's representation of authority to bind the client."). Even in jurisdictions where apparent authority is considered, apparent authority arises from the principal's manifestations to the third party, *i.e.*, Samuel Mitchell's manifestations of his counsel's authority to Defendant Howard or the court. *See Rojo v. IBP, Inc.*, No. 03-3300, 2005 WL 2697253, *4 (10th Cir. 2005); *Chavez v. Primus Auto Financial Servs.*, 125 F.3d 861 (10th Cir. 1997). Ms. Ruttenberg's role as counsel alone would be insufficient to cloak her with apparent authority to settle on behalf of Mr. Mitchell. *See Hayes v. Eagle-Picher Indus., Inc.*, 513 F.2d 892, 893 (10th Cir. 1975) (citing *Thomas v. Colorado Trust Deed Funds, Inc.*, 366 F.2d 136 (10th Cir.1966).

For all these reasons, this court concludes that Ms. Ruttenberg lacked express or implied authority to settle any claims on behalf of Samuel Mitchell as of July 31, 2015. Without authority from Samuel Mitchell, Ms. Ruttenberg could not have finally settled either claim: the claim for denial of familial relationship collectively asserted by Lisa and Samuel Mitchell, or the claim for deliberate indifference asserted solely by Samuel Mitchell against Defendant Howard.[8]

## CONCLUSION

Accordingly, for the reasons set forth in this Recommendation, this court respectfully **RECOMMENDS** that:

(1) The Motion to Set Aside Settlement [#63] filed by Plaintiff Lisa Mitchell be **GRANTED**, and

(2) The Motion to Enforce Settlement [#74] be **DENIED**.[9]

---

[8] Because this court finds that Ms. Ruttenberg's lack of authority from Samuel Mitchell to settle is dispositive of the issue regarding enforceability of the settlement reached between counsel, this court does not reach the more complicated issue of whether Ms. Ruttenberg had authority from Ms. Mitchell to settle her portion of her single claim against Defendant Howard. The court simply notes that there is no evidence in the record that Ms. Mitchell ever specifically agreed that settlement could include a non-admission of liability on the part of Defendant Howard [#159 at 9] and as of August 8, 2015, when the attorneys were agreeing to the form of settlement, including dismissing Samuel Mitchell and settling solely with Ms. Mitchell [#152-3 at 1], the relationship between Ms. Ruttenberg and Ms. Mitchell had deteriorated to such a degree [#153-2 at 1-4] that this court cannot conclude that Ms. Ruttenberg had authority to bind even Ms. Mitchell to different, material terms by that time. [#159 at 9; #156 at 74:11-18].

[9] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a

DATED: January 25, 2016          BY THE COURT:

                                 s/ Nina Y. Wang
                                 Nina Y. Wang
                                 United States Magistrate Judge

---

judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).